The **DAYTON RUBBER CO.**

v.

**GENERAL FELT PRODUCTS CO.**
Patent Appeal No. 6138.

United States Court of Customs and Patent Appeals.
July 1, 1955.

Clarence B. DesJardins, Howard T. Keiser and DesJardins, Robinson & Keiser, Cincinnati, Ohio (I. Louis Wolk, Dayton, Ohio, and Watts T. Estabrook, Washington, D. C., of counsel), for appellant.

Sidney Neuman, Chicago, Ill. (Thiess, Olson, Mecklenburger, vonHolst & Coltman, Chicago, Ill., of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

WORLEY, Judge.

This appeal is from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, 100 USPQ 26, reversing the decision of the Examiner of Interferences which dismissed the notice of opposition against registration of the mark "Springfoam" on, as originally filed, "sponge rubber in Class 1, Raw or Partly Prepared Materials," subsequently amended to include sponge rubber "in the form of sheet stock or pads for the manufacture of seat cushions and other cushioning materials."

Appellee, opposer below, predicated its opposition on ownership of the mark "Springstep" for carpet pads or underlays made of jute and hair fiber, first used in 1932, registered in 1933 (304,-480) and renewed in 1953, alleging that the mark sought to be registered so resembles its own as to likely cause confusion in trade. Appellant, applicant below, contended there had been no instances of actual confusion since it first used its mark in 1948 and that continued use would not result in confusion in trade.

Only the opposer took testimony and introduced exhibits, but both parties filed briefs and were represented at the hearing.

The testimony shows that appellee and its predecessor began use in 1932 of the mark "Springstep" on carpet pads and linings, more accurately described as carpet "underlays." Since that time extensive advertising in magazines, newspapers, and other media, have contributed to sales of over twenty-five million square yards of its products.

It appears that sponge rubber in sheet form for use as carpet cushioning material came on the market in 1946 or 1947. During 1948 appellee purchased such sheets from another concern and sold them under the "Springstep" mark, but no such sales have since been made.

The Examiner of Interferences was of the opinion that although the goods were of the same descriptive properties, the marks applied thereto were "registrably distinguishable," on the grounds that the word "Spring," common to each mark, possessed an unmistakable descriptive significance in relation to the respective products of the parties and was not capable, in itself, of identifying or distinguishing either product; and the suffixes being wholly dissimilar, concluded that concurrent use of the marks was not likely to cause confusion, mistake, or deception of purchasers.

■ In reversing the examiner, the commissioner pointed out that although the word "Spring" *suggested* a characteristic of the involved products, it did not *describe* them; that, as a conspicuous portion of each mark and "as the first syllable of the word 'Springstep' and of the single word 'Springfoam,' it may not be disregarded as being per se 'incapable of identifying such goods as to source.'"

The commissioner concluded that

"Carpet cushions or underlays made of felt have been an article of commerce for many years, and 'Springstep' has long been used as a trade-mark for felt carpet cushions and underlays; and since sponge foam rubber is a comparatively new product in the carpet cushion and underlay industry, I am of the opinion that the purchasers familiar with 'Springstep' felt underlays, upon seeing 'Springfoam' on sponge rubber sheets and pads, are likely to believe that the latter is opposer's trademark for a new type of underlay. In other words, the public is likely to believe that the two products emanate from the same source."

In its brief on appeal, and during oral argument before us, appellant renews the contentions advanced below, but the record is devoid of any evidence in support thereof. For example, it is urged that there is no indication of record that appellant's product is sold through furniture stores or other institutions that normally handle carpets. We think, however, the commissioner correctly pointed out there was likewise nothing in the record to indicate that the goods might not be appropriate for and sold as carpet cushions or underlays through stores which normally handle carpets. That observation is similarly applicable to appellant's contention that the channels of distribution for appellee's goods are distinct and "far afield" from its own. Again there is nothing whatsover in the record relating to appellant's channels of distribution.

■ We have read the decisions cited by appellant but, as is generally true in trade-mark matters, find none of them sufficiently in point with the facts here to disturb the decision appealed from. It is, however, a familiar and well settled rule in opposition proceedings that any reasonable doubt which may exist on the question of likelihood of confusion in trade should be resolved against the newcomer. The newcomer's field of trade-mark selection is not so limited as to require registration of a mark which sufficiently resembles an old and established mark as to likely result in confusion in trade.

The decision appealed from is affirmed.

Affirmed.

JOHNSON and COLE, JJ., dissent.

JACKSON, J (retired) recalled to participate herein in place of GARRETT, C. J.